**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**MITCHELL H. COHEN U.S. COURTHOUSE**
**401 Market Street**
**P.O. BOX 2067**
**CAMDEN, NJ 08101-2067**

**Andrew B. Altenburg, Jr.**                                                                                                           (856) 361-2320
**U.S. BANKRUPTCY JUDGE**

January 27, 2023

**VIA CM/ECF**

| | |
|---|---|
| Aiden Murphy, Esquire | Kenneth Borger, Esquire |
| Scura, Wigfield, Heyer & Stevens | Brenner Spiller & Archer |
| 1599 Hamburg Turnpike | 125 Route 73 North |
| Wayne, NJ 07470 | West Berlin, NJ 08091 |

    RE:    Saleh v. Romero
              Adv. Pro. No. 22-1290-ABA

Dear Mr. Murphy and Mr. Borger:

**DECISION**

The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

An understanding of the procedural history of the proceeding is warranted.

This matter was originally brought before the court on October 5, 2022, by the debtor/defendant, Antonio Romero ("Defendant"), through his motion to dismiss (Doc. No. 4) the complaint (Doc. No. 1) of Plaintiff Malik Saleh ("Plaintiff") in the above-referenced Adversary Proceeding. In sum, Plaintiff alleged that he possesses a nondischargeable claim under Section 523(a)(2) of the Bankruptcy Code, and further, that the Defendant should be denied discharge altogether under Section 727 of the Bankruptcy Code. Defendant moved to dismiss the case for failure to state a claim on which relief may be granted and argued that allegations in the complaint did not meet the pleading requirements imposed under the *Twombly* and *Iqbal* cases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In response, as was his right under Fed. R. Bankr. P. 7015, Plaintiff timely filed an amended complaint (Doc. No. 5). The Defendant filed his second motion to dismiss (Doc. No. 6), and Plaintiff responded (Doc. No. 10).

On November 22, 2022, the court conducted a hearing on Defendant's second motion to dismiss at which time both parties, through their counsel, appeared. As the record reflects (Doc. No. 13), the court granted the motion to dismiss because it found that the second complaint failed

to state a claim on which relief may be granted, as the threadbare allegations merely reciting the elements of the causes of actions did not meet the pleading requirements of *Twombly* and *Iqbal*. *Id.* In addition, the court expressed its concerns as to whether Plaintiff had standing, as he failed to demonstrate how Defendant, an individual, could be liable for a corporate debt under the law. Being a member or agent of an LLC was not enough to impose personal liability. Nevertheless, in lieu of immediate dismissal, the court permitted Plaintiff one final opportunity to amend his complaint. (Doc. No. 14).

On his third attempt, Plaintiff filed his Second Amended Complaint ("Second Amended Complaint") (Doc. No. 15). In response thereto, Defendant filed his latest motion to dismiss (the "Motion") (Doc. No. 16), Plaintiff responded, and the parties appeared before the court and made arguments on January 10, 2023. With all pleadings submitted and all hearings concluded, the record is closed, and this matter is now ripe for disposition.

A Civil Rule 12(b)(6) motion to dismiss for failure to state a claim is made applicable in an adversary proceeding pursuant to Bankruptcy Rule 7012. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for failure to state a claim upon which relief may be granted. *Wells Fargo Equip. Fin., Inc. v. Alario,* No. 10–37591 MBK, 2011 WL 3510865, at *2 (Bankr. D.N.J. Aug. 9, 2011). A motion to dismiss under Civil Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff has failed to set forth "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (ellipses omitted). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation omitted). The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . . Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted).

As they are brief, the court incorporates the facts alleged in the Second Amended Complaint:

8. On or about January 27, 2021, Plaintiff entered into an agreement for services with Elevated Automations LLC ("Elevated Automations") (the "Agreement"). See Exhibit A attached hereto.

9. As part of the Agreement, Plaintiff transferred a total of $50,000 in exchange for Elevated Automations creation of an online marketplace for a "Shopify" store for the purpose of selling pillows and cushions made for couches.

10. The transfers to Elevated Automations took place via $30,000 by wire transfer and $20,000 by credit transfer.

11. Prior to entering into the Agreement, Plaintiff was in communications with Defendant.

12. Defendant was co-founder, principal and majority owner of Elevated Automations. See **Exhibit B**[1] attached hereto.

13. Defendant participated in three zoom meetings between December 2020 and January 2021. These zoom meetings demonstrated how much a "Shopify" store could produce revenue based on investments given by Plaintiff.

14. At these zoom meetings, Defendant represented to Plaintiff that Plaintiff would see a complete return on his investment within the first year following the investment, and that Elevated Automations would create an online store for Plaintiff.

15. At these meetings, Defendant represented that if Plaintiff did not make his investment back within the first year, Elevated Automations would return his entire investment.

16. Plaintiff entered into the Agreement and did in fact pay $50,000.00 to Elevated Automations based on all the above representations.

17. No return of Plaintiff's investment was ever made.

18. Defendant made these statements for the sole purpose of convincing Plaintiff to enter the Agreement.

Second Amended Complaint, ¶¶ 8–18. These facts are undisputed. It is also undisputed that Defendant did not sign the Agreement nor did he make any guarantee thereunder. What is more, there has been no determination by any court that Defendant is liable to Plaintiff. These facts alone, taken as true, do not establish a cause of action under 11 U.S.C § 523(a)(2) nor do they give standing to Plaintiff to pursue claims under Section 727 of the Bankruptcy Code.

### Section 523(a)(2) Claim

However, apparently foregoing seeking personal liability for a corporate debt, Plaintiff has alleged that Defendant personally committed fraud, in the course of the sale pitch and/or negotiating the Agreement, under Section 523(a)(2). Section 523(a)(2) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2). Plaintiff specifically alleges in Count One that:

---

[1] Exhibit B appears to be copies of text messages between the parties. However, those messages did not start until after the Agreement was signed and their relevance is questionable.

24. Defendant represented that if Plaintiff did not see his return on investment within the first year, Defendant's company would return Plaintiff's entire investment.

25. Defendant made these representations to Plaintiff knowing the representations were false when made and Defendant made the false representation with the intent that Plaintiff rely on said representations.

26. Defendant, as co-founder and principal of Elevated Automations, made these representations at a time where he knew the statements were untrue based on Elevated Automations' solvency.

27. Based on these communications, Plaintiff entered into the Agreement and invested $50,000 in Elevated Automations.

28. No return of investment money was ever made.

29. Plaintiff reasonably relied on Defendant's false representations when entering into the Agreement and transferring money to Elevated Automations.

30. Plaintiff's reliance on Defendant's representation was justifiable because Defendant, as a principal and insider of Elevated Automations, had specialized knowledge of Elevated Automations solvency.

31. Defendant never intended to repay Plaintiff's initial investment, and Defendant knew at the time of inducement that Elevated Automations did not have the ability to repay the initial investment.

Second Amended Complaint, ¶¶ 24–31. Plaintiff has properly alleged the necessary elements to establish a possible claim under Section 523(a)(2), and has wrapped allegations directly at Defendant around those elements. These pleaded allegations, taken as true and viewing them in the light most favorable to the Plaintiff, appear to state a claim to relief that is plausible on its face. *Iqbal,* 556 U.S. 662. If true, and because the court must take the allegations as true, the court can draw a reasonable inference that the Defendant is liable for the misconduct alleged—fraud or misrepresentation during the sales pitch/contract negotiations. *Id.* And, while the court is concerned that Plaintiff may not fully understand his ultimate burden of proof, that matter will be left for another day. Accordingly, the Motion as to the Section 523 claim will be denied.

### Section 727 Claims

Plaintiff has alleged claims against the Defendant under Section 727(a)(4)(A) and (5). In turn, Defendant has challenged Plaintiff's standing to bring the Section 727 claims. Importantly:

> Section 727(a) provides exceptions to the general rule that bankruptcy debtors are entitled to a discharge of their debts. *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993). The section is construed liberally in favor of the debtor because "[c]ompletely denying a debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt pursuant to § 523, is an extreme step and should not be taken lightly." *Id.; see Wachovia Bank, N.A. v. Spitko (In re Spitko),*

> 357 B.R. 272, 298 (E.D. Pa. 2006) (noting that denial of a debtor's discharge is a harsh sanction). . . .
>
> A party objecting to discharge bears the burden of proving those objections by a preponderance of the evidence. *Id.; Pyramid Tech. Corp. v. Cook (In re Cook),* 146 B.R. 934, 940 (Bankr. E.D. Pa. 1992); *see Grogan v. Garner,* 498 U.S. 279, 286–87 (1991) (determining that preponderance of the evidence is the appropriate burden of proof governing the applicability of the Bankruptcy Code's nondischargeability provisions). The Court has discretion in determining whether to grant the debtor a discharge. *In re Cook,* 146 B.R. at 940.

*In re Coven*, No. 04-24703 (RTL), 2007 WL 1160332, at *5 (D.N.J. Apr. 17, 2007).

But first, Plaintiff must have standing.

As the Third Circuit has instructed when addressing the issue of standing in bankruptcy cases, a party must demonstrate:

> an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L.Ed.2d 135 (1990). Additionally, the party must establish that the injury "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Id*. (internal quotations omitted).

*In re Global Industrial Technologies, Inc.,* 645 F.3d at 210; *see generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

> "[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Federal Election Commission,* 554 U.S. at 734, 128 S. Ct. 2759. Although a case or controversy may exist at the time the litigation is commenced, it must continue at every stage of a proceeding:
>
>> That restriction requires that the party invoking federal jurisdiction have standing—the "personal interest that must exist at the commencement of the litigation." *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000) (internal quotation marks omitted). But it is not enough that the requisite interest exist at the outset. "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 [117 S. Ct. 1055, 137 L.Ed.2d 170] (1997).

*Davis v. Federal Election Commission,* 554 U.S. at 732–33, 128 S. Ct. 2759; *see, e.g., Chamber of Commerce of U.S. v. E.P.A.,* 642 F.3d 192, 199 (D.C. Cir. 2011).

*In re Aloia*, 496 B.R. 366, 377 (Bankr. E.D. Pa. 2013); s*ee also Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (Injury-in-fact requirement for standing requires an injury that is both concrete and particularized. Particularized means that it affects the plaintiff in a personal and individual way. Concrete means *de facto*—that it actually exists. A concrete injury may be tangible or intangible, and can include the risk of real harm. Just because Congress grants a cause of action does not mean that the plaintiff has standing for violation of the procedural right. Plaintiffs must allege a harm that is "actual or imminent" rather than speculative to have federal court standing); *In re Wilton Armetale, Inc.*, 968 F.3d 273, 280–81 (3d Cir. 2020) (distinguishing between constitutional standing, and "bankruptcy standing," i.e., ability to bring an action under the Code).

To be sure, negotiating a contract on behalf of an LLC does not, as a matter of law, give rise to a claim for personal liability. *Corp. Incentives, Inc. v. Unified Safe Guard, LLC*, No. CV 20-13471, 2021 WL 2043092, at *2 (D.N.J. May 21, 2021), *reconsideration denied*, No. CV 20-13471 (FLW), 2021 WL 2666667 (D.N.J. June 29, 2021). In addition, Plaintiff's counsel conceded that Defendant was not acting outside the scope of his role as a principal of the LLC. Audio of 1/10/23 hearing at 2:31 p.m. So, where's the standing for Plaintiff to pursue claims under Section 727 of the Bankruptcy Code?

Certainly, under Section 727 "[t]he trustee, *a creditor*, or the United States trustee may object to the granting of a discharge under subsection (a) of this section." 11 U.S.C. 727(c)(1) (emphasis added). Section 727(c)(1) is all-inclusive in terms of who may object to discharge under 727(a). *In re Coven*, 2007 WL 1160332, at *11 n.3. However, the Plaintiff must then establish that he is a creditor. His creditor status is premised on his fraudulent inducement claim against the debtor.

But that raises a Catch-22. If the Plaintiff is not successful in proving his fraudulent inducement claim, then he will not be a creditor for purposes of bankruptcy standing under Section 727(c). *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 280 (3d Cir. 2020) (distinguishing between constitutional standing, and "bankruptcy standing," i.e., the ability to bring an action under [Section 727]).

If the Plaintiff is successful, however, the fact that his claim will then be nondischargeable pursuant to Section 523(a) eviscerates his constitutional standing, as he will no longer suffer an injury-in-fact by the debtor's Section 727 discharge—the Plaintiff's claim will not be discharged regardless. *See In re Santos*, 1:20-BK-12993-SDR, 2022 WL 4474127, at *6 (Bankr. E.D. Tenn. Sept. 26, 2022) ("A denial of discharge under Section 727(a) affects all creditors, but plaintiff cannot act for other creditors unless her actions also would help her[.]"); *In re Brown*, 18-10617-JLG, 2018 WL 4637465, at *4 (Bankr. S.D.N.Y. Sept. 25, 2018) ("A creditor like Jennifer, who holds only a non-dischargeable claim against the Debtor, is not similarly situated. She will neither suffer an injury if the Debtor receives his bankruptcy discharge, nor realize a benefit if he is denied his discharge. [Therefore,] she lacks standing to bring the claims against the Debtor in Count 1 of the Complaint."): *BRite Fin. Servs., LLC v. Spearman (In re Spearman)*, Nos. 17-41184, 17-04353, 2017 Bankr. LEXIS 3472, at *4-5 (Bankr. E.D. Mich. Sep. 12, 2017) ("the Plaintiff lacks standing

in this adversary proceeding. Plaintiff no longer has a personal stake in this controversy as it can gain nothing for itself beyond the relief already obtained pursuant to §523(a)(6). Plaintiff received the entire relief sought in this action and its requested relief under §727(a)(2) is moot."). See also *In re Mapley*, 437 B.R. 225 (Bankr. E.D. Mich. 2010) (footnotes omitted):

> It follows that the relief Plaintiff seeks in this adversary proceeding would give her nothing she does not already have—what she already has is a claim against the Debtor that will *not* be discharged in the Debtor's Chapter 7 case. Thus, Plaintiff can gain nothing for herself by blocking the Debtor's discharge under § 727. And Plaintiff does not have standing to object to the Debtor's discharge solely on behalf of *other* creditors.

*Id.*, 228–29. Likewise, if Plaintiff is ultimately successful here, he can gain nothing for himself beyond the relief already obtained and, moreover, he does not have standing to object to the Debtor's discharge solely on behalf of *other* creditors in this case – none of whom have sought the extraordinary or extreme step of objecting to the Defendant's discharge.

Accordingly, the court will dismiss Counts 2 and 3.

An appropriate order has been entered consistent with this decision and has been entered on the court's docket and served electronically via the court's case management system.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge